Our first case this morning is Mark McKay against Ted Krimmel et al. We're going to hear from Caroline Annapol for appellant. Good morning, your honors, and may it please the court. My name is Caroline Annapol, and I represent the appellant Mark McKay in this matter. I'd like to request two minutes for rebuttal. Granted. Thank you. The district court's two holdings in this case were made in error. First, with respect to the personal involvement issue, the district court made improper inferences in favor of the moving party at summary judgment, made impermissible credibility determinations, and misapplied third circuit precedent. Second, with respect to the strip search issue, the district court misapplied Supreme Court precedent. This court should reverse the district court's holdings and remand this case for trial. These errors were made with respect to both defendants, and I'll address officer Graeo's liability first. Is there any difference between the excessive force claim in terms of the arrest and then the unreasonable search? In other words, in terms of the identification, was there any factual difference in how Mr. McKay went about attempting to identify the officers involved? No, your honor. The unreasonable search was construed by the district court as part of the excessive force claim. The two officers engaged in one course of unconstitutional conduct, but Mr. McKay did actually reach inside his underwear to conduct the sexually invasive search, but he identified both officers as using excessive force throughout the incident. Could you be a little bit more specific about that excessive force issue? Exactly what did the officers do that you claim was excessive force? The two officers, upon encountering Mr. McKay in his yard, shoved him to the ground, handcuffed him at gunpoint, pulled him up by the handcuffs, and all of this with no, they had given no instructions, asked no questions, and had no reason to believe he was likely to resist arrest or flee. And then while he was handcuffed at gunpoint, they conducted a search on him that included sexually invasive elements. Officer Gansky reached inside his pocket to take out his cell phone, while officer Graeo reached inside his underwear and searched around his testicles. So from your standpoint, Mark McKay did not do, engage in any offensive conduct with the officers? That's correct, your honor. And that has been uncontested. That statement is unopposed by the defendants. The reason I asked the first, or the only question that I've asked, is it seems that there is a bit of a difference between the two. On the excessive force claim, in terms of making the arrest, that he had said it was all of the officers that were involved. And in connection with the search, it wasn't necessarily all of the officers, it was one or the other. And with respect to the latter of the search, there's a lot of deposition testimony where Mr. McKay says, I don't, again, there was him and then Gansky, I don't know. I don't want to point a finger to exactly one of the two. I do, again, explicitly, explicitly remember someone that was in my box of briefs. It wasn't following, it was just searching inside my leg. And I believe it was a different person, one grabbed my phone, another went in. Very indeterminate. That doesn't appear to be the type of ID that is called for in order to sustain a claim. Again, that's not the excessive force, this is the unreasonable search. I'll answer your question in two parts, Your Honor. The first part of the incident that you described, I would disagree with your statement that all of the officers were involved in the first part of the excessive force. Mr. McKay attested that- You want that, right? No, Your Honor. You don't. You want to, there you want it to be, they were all involved, therefore they all could be liable. No, Your Honor. There were six officers at the scene that day, but only two of them, Officers Grayo and Gansky, participated in the excessive force. And those are the only two people that Mr. McKay sued. That's why this case is more similar to Smith than- That helps you because we've got case law that says when you sue eight or ten police officers and you don't distinguish among them, you haven't carried your burden. Exactly. But here, you're pointing the finger at these particular two officers, correct? Exactly. And not just pointing the- But as to the second part of the case, it's really just one officer, you said. The sexually intrusive search that you've alleged was just Gansky or- Officer Grayo reached inside Mr. McKay's underwear, but the two officers were standing shoulder to shoulder and conducting a search together. Officer Gansky went inside his pocket, Officer Grayo went inside his underwear. All right. But you're not arguing, are you, that the frisk in the pocket was an unreasonable search? That would be standard operating procedure during an arrest, right? That's correct, Your Honor. That particular action when looked at independently is not something that Mr. McKay challenges. However, I bring it up to explain that the two officers were standing together, carrying out the search together, which had sexually intrusive elements. But it was Officer Grayo. And to respond to the second part of Judge Ambrose's question from a second ago, Mr. McKay, in the portion of the deposition testimony that you read, he did identify the tall, slender officer who he described- excuse me- who he identified as Officer Grayo as the one who went inside his underwear. And it's true that he may not have that with 100% confidence, but absolute certainty in making this kind of identification is not required. And the district court itself recognized that Mr. McKay had identified Grayo and Gansky, distinguished between them by appearance, and then testified that, based on that distinction, the tall, slender Officer Grayo is the one who went in his underwear. But even though the court acknowledged that identification in its opinion, it then discarded the identification, thereby making it an impermissible credibility determination. The intrusion into the underwear, as I understand it, was because they were looking for drugs. And it was their understanding that the drugs may have been hidden in the underwear. Is that accurate? The defendants have alleged no particularized suspicion that Mr. McKay was especially likely to have drugs in his underwear. And the Supreme Court has held that a search that goes beneath the outer layers of clothing requires distinct elements of justification. We can compare this to a case cited by the district court in its opinion, Parker, where the officers had a specific tip-off that that suspect was likely to carry contraband in his underwear. But even in that case, they searched him in a private room. This case is unreasonable because of all four of the factors laid out in Bell, scope, manner, place, and justification. Bell is a prison case though. I was puzzled by the emphasis in the district court about calling it a strip search or whether it was or wasn't a strip search. Isn't that all beside the point? All you really have to plead and prove if you get a trial here is that it was unreasonable, right? So doesn't the nomenclature fall by the wayside? You just need to show that it was unreasonable and too intrusive under the circumstances. I'd agree with that, Your Honor. And I'd be happy to make argument as to why this court should define it as a strip search, but I'd agree that it's not necessary. Both in Safford and in Bell, the Supreme Court held that the exact label isn't important. What's important is balancing the need for the search against the privacy interests. And Bell applied- And their response is that your friend on the other side says, well, it was just accidental. I mean, the McKay's shorts fell down, right? McKay's shorts fell down by accident, but that was not the most intrusive part of the search. And that's not really what Mr. McKay is challenging. The most intrusive part of the search was when Officer Greyo reached inside his underwear and touched his genitals as he searched around them. That's the real reason that we're here. And you're looking for a remand. The district court just trunked- As I understand the essence of your argument, the district court truncated the analysis on both issues. It just didn't take them, it didn't fully evaluate the excessive force or the intrusive search issues. I wouldn't say didn't fully, I would say evaluated incorrectly. The district court made reversible error in analyzing both issues. But it's, but you don't prevail. It's vacate and remand, right? Correct. That was my question. Going back to the excessive force claim, so is it that you were attempting to, or the complaint was saying that it was Greyo and Gansky simply because they were participants in that or what? No, your honor. In fact, Mr. McKay testified that Greyo and Gansky led the way with everything. He specifically sued them and not the other officers who are on the scene that day because they were quote, more of the hands-on officers who quote, pretty much led the way with everything. Were they both involved in the same conduct? I that occurred, were both officers involved? They were looking for drugs, I understand. Well, your honor, both officers did not reach inside Mr. McKay's underwear, but they both participated in the course of unconstitutional conduct. And furthermore, under the Smith case, it's not necessary at this stage for Mr. McKay to establish the extent of each officer's participation in the conduct. Only that they participated in the unconstitutional conduct and then the extent can go to the jury. And what do you say was unconstitutional about their conduct? They, without any justification, they used excessive force when they pushed him to the ground, handcuffed him at gunpoint, picked him up by the handcuffs, and then conducted a sexually, a search on him with sexually invasive aspects. You say there's no justification, even though they said that they were specifically looking for drugs. Let me clarify what I meant by no justification. In the bell factors, which I mentioned earlier, the Supreme Court calls for heightened scrutiny of public searches and requires specific and more distinct elements of justification for searches that go beneath the clothing. So not only was this a sexually invasive search that involved actual genital contact, it was also conducted in an unreasonable manner in that the officers didn't give instructions, ask questions, explain what was going to happen. As far as the record reflects, they didn't even put on gloves to ensure they were conducting a hygienic search. And all of this occurred in Mr. McKay's public front yard, where any passerby could have seen, in fact, his teenage son did see. So I don't say there's no justification for a search at all. I say there's no justification for a search of this sexually intrusive nature in this unreasonable manner in this very public place. The officers have alleged no specific fears that would justify a search of this nature. They didn't first pat down Mr. McKay and feel a weapon that they wanted to investigate further. They didn't have, as I said, comparing to the Parker case, they didn't have any particularized information that Mr. McKay was likely to conceal things in his underwear. Mr. McKay was already handcuffed at that point, so they had no fear and have alleged no fear that he would reach into his underwear to pull out a gun or dispose of contraband. They had justification for a search, but not a search of this nature. Based on your comment, I gather that he was arrested? They had a warrant for his arrest, yes. And what was the warrant based on? Drug charges. Drug charges. Okay. Were drugs found or no drugs were found? There were no drugs found on his person. Okay. But in looking over this case, were you a bit surprised that there was no qualified immunity from the defense made? That issue wasn't briefed by either party. Were you surprised that it wasn't briefed? Was I personally surprised? I might have thought that we would talk about it a little bit, but it was never raised at any point by the defendants. And furthermore, it was clearly established at that time that to conduct a search under the clothing and especially a search under the clothing in a public place. I understand that the district court essentially relieved the officers of the conduct that you complained about. Is that accurate? What do you mean by that? The district court held that these last two defendants must be granted summary judgment because McKay's allegation that the officers had been involved in the alleged conduct was not sufficient to support the claims. That's right. So the officers were not charged with any offense that you're complaining about? That's correct, but we argue that those district court holdings were made in error. Okay. Got it. Thank you, Ms. Annapol. We'll hear you on rebuttal. Thank you. Thank you. Ms. Kaczynski. Thank you, Your Honor. And may it please the court, my name is Pala Kaczynski, and I'm here on behalf of officers Christopher Graeo and Joseph Gansky. And I would submit to this court... I may ask at the outset just this question that I segway to you from opposing counsel. Why was there no qualified immunity defense made? Well, Your Honor, this was a pro se case up until it reached this court. My officers were never deposed. I didn't really have a record to establish a qualified immunity argument. And really, on an excessive force case, my assumption was that we were going to trial until I took Mr. McKay's deposition, and he completely backed away from the main allegation in his complaint, which was that he suffered an intrusive body cavity search in public. And he was unable to identify the officers who allegedly committed the acts of excessive force on him. Well, he did mention Graeo and Gansky repeatedly in connection with the arrest, did he not? He mentioned them in his complaint, yes. Which is treated as an affidavit for purposes of summary judgment. It is. Because it's a verified complaint. But then he equivocates in his deposition. And if you look at the important sentence in the district court's opinion, which I would like to draw to the court's attention, is the court found, Mr. McKay does not identify which is the one officer who allegedly threw him to the ground, which is the basis of his excessive force claim. The district court has admitted that when the decision was made in the two motion to dismiss cases, the court was not clear about whether the intrusive body cavity search was included as part of the excessive force or not. The only claim that went forward after we filed a motion to dismiss twice was the excessive force claim under the Fourth Amendment. The way the opinion is written, it appears as though the court included in that this intrusive body cavity search. But then it became clear that there was no intrusive body cavity search. Mr. McKay. Let's assume we agree with you on that. There's no strip search. Correct. Why is that dispositive? Just because there wasn't a strip search doesn't mean ipso facto it was a reasonable search. Isn't it also possible that it was an unreasonable search, even if it wasn't a strip search? It is possible in general. But the facts of this case are that all of the unreasonable search case were already dismissed. There was one claim that went forward and that was an excessive force claim. But how could they be properly dismissed? If he has alleged that his private parts were touched without cause, how could the case be dismissed? Maybe I'm oversimplifying this, but here's what I've seen from what I've read in the record and in your briefs. It's quite typical, I think it's almost given, that when a person is taken into custody and arrested pursuant to an arrest warrant, that they will be patted down. Correct? Correct. So if this was a pat down and it's not your client's fault that McKay's shorts fell down, that just happened, can you pat somebody down who's wearing boxer shorts? I assume so. But the allegation is that this isn't your ordinary pat down, this was extra. I understand. That sounds like a classic factual dispute that has to go forward. What am I missing? It is a factual dispute because the officers have denied that that occurred, that there was no search except for a pat down. That is the officer's position. But the reality is that Mr. McKay has still not been able to clearly identify who performed that unreasonable search. So there's that, which is, you know, the district court said he never identifies who, he says one hand pushed him down. And I'm not, I'm not, I'm not talking about the arrest right now. Let's stay, stay on the search. And Ms. Annapol just mentioned which officer was touching the pocket, which officer was touching the genitals. He said the tall slender one was the leader. It would have been more clear if he had said, you know, name, rank, serial number, officer Greo is the one that was touching my private parts. But it was good enough, it was close enough to say the tall slender one, wasn't it? Why isn't that enough of an identification? I don't believe so, your honor, because as Ms. Annapol said, the allegation is that there were officers there. One is grabbing phone and one is allegedly going into the boxer shorts. And he does equivocate and says, I don't know. I believe it was the tall slender one. I believe that was Gansky, the tall slender one. Pardon me? Was Gansky, is Gansky tall and slender? I believe both of them are, your honor. There's no short stocky officer. So again, they haven't been deposed. I haven't been able to bring them into court, but they have a completely different version. This arrest took place in the front yard, right? I'm sorry? This arrest took place right outside the house in the front yard, is that correct? It was in the side yard. Side yard? The complaint says the front yard, the deposition says the side yard. I can understand the arrest taking place there, but going back to the search, which comes later, why not go into the house and do the search if you want to do a search for possible drugs on a person's, you know, in areas that you would normally not search in public? Well, my first answer is there wasn't a search of the private parts, but if there had been, this was a drug case. This was a case where Mr. McKay was being accused of distribution from this residence. Okay, if you're accused of distribution, why do a search in the front yard then? It was the side yard, your honor. Side yard. Why not? Why do a search in the side yard? You would do it if you're about to handcuff them, and then what they did was they did bring them back inside while the search was going on, so they weren't outside. It was Mr. McKay, and then there was the other resident of the house that was also detained, and they were brought inside, so you want to make sure of what is on the person before then you bring them into a place where... The search did not take place inside, did it? Again, your honor, there was no search, so the allegation is it took place outside. What did take place if it wasn't a search? It was a pat down and handcuffing without incident. But this is a disputed fact. You're saying it. You may be right. You know, we don't know. We weren't there. But there's an allegation that says it wasn't a pat down. There is an allegation, your honor, but the allegation does not rise to the level of a constitutional violation because there is no specificity as to who did what, and there is no... So you admit there's specificity about the intrusiveness of the search, correct? No? Well, no, your honor, because... It's not sufficient to say this officer was fondling me or touching my... Specifically said he was... Yes. That's not specific enough? Your honor, he specifically says the officer was not fondling. The officer was in and around his testicles in between there and his thigh. He never says that he was touched. That's not specific enough? The allegations you just mentioned are not specific enough? I don't believe they are, your honor, because that's the same as a pat down. When you're in and around someone's... Touching somebody's genitals is a standard pat down. That's news to me. But your honor, he doesn't say his genitals were touched. He said they were around his genitals. And that's... There's a specific... He specifically says it was not fondling. So there wasn't that type of touching. He didn't say touching my testicles. He never alleged that the officer touched his testicles. He alleged... The allegation is he searched in and around my testicles, so... And you're saying that's not good enough for an unreasonable search, if that's true. I know you say it's not true. You're saying it's made up. But if that's true, you're saying that's not an unreasonable search. Not in this situation, your honor, no. Wow. Okay. And I don't believe that the identification was made sufficiently either. The district court addressed the issue. That your... The district court addressed the issue. I'd like to read to you what I have on that and see what your explanation is. The district court concluded that McKay had effectively recanted his claim of an intrusive body cavity search, having admitted that his shorts fell down and were not taken off. It sounds a bit inconsistent with what we're hearing in this argument. And the other officers only searched beside his leg and in between, but did not state that any clothing was removed. Could you elaborate on that? Certainly, your honor. Again, the main focus of the complaint and the reason I believe the district court improperly included the intrusive body cavity search in the surviving excessive force claim was because Mr. McKay described this as an abomination under God, that he was forced to reveal his nakedness to another man. And that didn't happen. And his deposition made it clear that other than the shorts falling down by accident, no piece of clothing was removed. He was not asked to bend over. No body cavity was searched. And he was never naked or even partially naked. Your position is that the shorts were not removed, but in fact, they fell down by accident. Yes, that's Mr. McKay's position. He says that, that he thinks that when they were going through his pockets and took out the phone, that that released the drawstring and the shorts fell down. That's his position. Can you cite where in the district court's opinion the court referenced the personal  Certainly, your honor. I believe it is. Okay. He says that the facts and the records show that after Mr. Where are you reading from? Okay, I am reading from page eight of the opinion. To summarize, the facts and the records show that after detaining Mr. McKay in his yard, officers patted him down while he remained partially clothed, did not remove any clothing, did not ask him to spread his legs or bend over, did not search any body cavities, did not expose any of Mr. McKay's private areas, and may have touched Mr. McKay's inner thigh and his testicles while patting down his legs. In other words, Mr. McKay does not allege that any strip search took place. All right. So none of that distinguishes between the two officers. Right. Right. And then and and the court says may have allegedly touched Mr. McKay's inner thigh and his testicles while patting him down his legs. May have. May have. Right. That's a disputed issue of fact. And then the district court pivots and says there was no strip search that took place. That was why I asked the initial question. The district court seemed to be concluding the logical progression of the district court's opinion is if there's no strip search, therefore, no unreasonable search. Right. And what I'm what I'm wondering is that seems peculiar to me because I can envision all kinds of unreasonable searches that are not strip searches. And I think you conceded that at the beginning. There could be instances where a search is unreasonable, even if it's not a strip search. There could be, Your Honor. The district court said he may have touched his testicle. So why don't we just vacate a remand and say do it over and have an examination of what really happened here? Because you've got two very different stories of what happened here. Because, Your Honor, the the claim of Mr. McKay's that went to summary judgment, the sole surviving claim that would have been tried but for summary judgment was an excessive force claim under the Fourth Amendment. The excessive force claim, the district court is very clear, is Mr. McKay being thrown to the ground, handcuffed and picked up by the handcuffs. That was it. All right. So you're making a procedural argument. You're saying the the intrusive search issue was not live on summary judgment. It had already been disposed of on the motion to dismiss. It had been. Why did the district court talk about it? The district court acknowledges that its opinion on the motion to dismiss was vague and did not explicitly state that all of, you know, that that intrusive body cavity search part had been dismissed. And then when the district court looked at all of the evidence and went through the surviving Fourth Amendment excessive force claim, the court decided that that was going to be dismissed because Mr. McKay never does say who it was that threw him to the ground, handcuffed him and picked him up by the handcuffs. And then because the motion and the response had dealt with the strip search, as courts do, they like to address every issue raised by the parties. The district court went through that and said there is no intrusive body cavity search. Therefore, if that issue had already been adjudicated, it's a little strange to revisit it when it's not live. But because let's go back to the excessive force for a minute. You're quite right that Ms. Anapol will correct me on rebuttal if I'm mistaken, but I think you're quite right that there's not an identification as to exactly which of the two officers, Gray or Gansky, threw him to the ground, right? That is right, Your Honor. But there is an allegation that the two of them were involved in throwing him to the ground, correct? There is an allegation in the complaint that that is the case. The allegations made in the deposition are that it was six officers and a dog and that it was one hand on the back of his neck that threw him to the ground. So it's unclear as to at that point if Mr. McKay is talking about Gray or Gansky or not. But either way, he never does say who it was. He doesn't use any physical description, any name, nothing. But if he says Gray or Gansky are the two that threw him to the ground, isn't that good enough under our case law? Isn't that different? Isn't that different than the cases where people sue a series of officers and don't make any distinction as to which officers did what? I can explain how that is different. The one case, the Howell case, it's different because in the Howell case, I mean, it's the same because in the Howell case, there were two potential perpetrators out of six, but the plaintiff could not say which of the two it was. Therefore, the court was faced with the fact that one is not guilty of improper conduct and one is, and there's no way to tell which. So in that case, summary judgment was upheld. What about Smith? The Smith case was different because there were five corrections officers and the plaintiff clearly said, all five of them beat me. They kicked me, they punched me, but he couldn't say who inflicted which blow. So that was more about the extent. That sounds a lot like this case because the allegation here isn't all six of them threw me to the ground. It's that Gray or Gansky were the ones that threw me to the ground. No, it's not, Your Honor. The allegation when you look at the deposition testimony is one officer threw him to the ground, one hand on the back of my neck, and he never says who. Isn't what we're talking about is the extent of their participation? It is not, Your Honor. They were there, right? In Smith, it was. Okay, you were arrested. Somebody takes you, you're outside and you were arrested and you know that there are six people and a dog. So the dog you know is not doing the constitutional violation if there is one. So it's one of the six people. You know two of them and you identify them and you think that they were the ringleaders of the group or the head of the group. You're telling me that you cannot in any way bring a complaint against them. It would seem that you're saying these two were involved and the only thing we have to discover is the extent of their participation. They were involved in that arrest, correct? Gray or Gansky were involved in the arrest. Gray or Gansky were involved in the arrest. Who was the leader of the team? The leader of the team. Who were the senior officers? The senior officer, I don't know for certain, but I would assume it's Gansky because I believe he was the one certified by the county. So how did Mr. McKay come to know that it was Gray or Gansky that were involved? Because their name is all over his arrest papers. They were the two that interviewed him back at the police station. So you're telling me that that's not a proper identification of these two people in connection with the possible excessive force and possible unreasonable search? Well, Your Honor, it is this situation that the court faced in Howell versus Cataldi where there were two potential perpetrators, but they didn't know, they couldn't say which one. So you were faced with one of them is free from liability, one of them is not. Back to Judge Hardiman's question. If you look at Smith v. Messinger, isn't what we're talking about is the extent of their participation? Wouldn't your better argument be that they were not actively involved in connection with the arrest in terms of the takedown or the search? Well, Your Honor, there were seven officers that were involved in this arrest. Your counsel was right on the job at that moment. Wouldn't that be your better argument, that they were not actively involved? That would be my better argument, and I've made that argument because there were seven officers present, and all of them were involved. There were six officers and a dog. No, six officers with SIU, one with Lower Southampton Township, and the dog. Yes, so, and the dog, I mean, I've had cases where dogs were involved in use of force, but not this dog. I get it, I get it. A total of six officers were involved in throwing him to the ground, is that accurate? Mr. McKay says it was one hand on the back of his neck, so it's very unclear as to who was involved in throwing him to the ground. And again, that allegation has been denied, so he really wasn't thrown to the ground. He gave the deposition testimony, he stated all six officers threw him to the ground. All six. No, he doesn't say all six. He says one hand on the back of my neck and I was shoved to the ground. He says I was attacked by six officers and a dog, but he never says thrown to the ground by six. Well, here's what we have in the record so far. At JA-47 deposition, about six cops, which included Gray-Langansky, came out with the dog, and at that time, I have a hand around, like around the back of my neck, and shoved me to the ground. JA-48, Gray-Langansky were more, referring to Gray-Langansky, were more of the hands-on officers that I remember the most. The son's affidavit, JA-97, I had seen two police officers, later known to me as officers Gray-Langansky, picking my father up off the ground in handcuffs. And then you have JA-35, verified complaint, Mr. Gray-Langansky threw Mr. McKay to the ground, placed him in handcuffs at gunpoint, and brought him to his feet. That's not enough? No, that's not enough. What is enough? What is enough is that if you say one officer threw me to the ground, then you say who it was. If you say six officers threw me to the ground, then it becomes a case of extent of participation. But that's not this case, Your Honor. If he said that these two threw him to the ground, then you know the extent of their participation is pretty significant, don't you? I mean, you're no longer an advocate. You're the judge. How do you differentiate between a valid claim and an invalid claim in terms of identification? Well, you don't, Your Honor. And this case was pending for four and a half years. I'm asking you how you go about doing it. If it's a trial in front of me, I ask for identifications. I say, which one was the person? This is not good enough identification of these two officers. Pardon me? This is, practically speaking, this is not good enough identification of these two individuals. It's not, Your Honor. Not as... And why is it not? Because the allegations of excessive force are very specific about being thrown down. And there is no allegation as to which officer threw him down. And even if he's trying to say it was two... The verified complaint on page 35, referring to Gray Olganski, threw Mr. McKay to the ground, placed him in handcuffs at gunpoint, and brought him to his feet. Yes, and then when he was asked for specifics, he said, I had a hand around the back of my neck and I'm shoved to the ground. That was part of the testimony, the deposition. Yes. So that's where he equivocates... There's other testimony plus the verified complaint. Your argument is the deposition testimony guts the verified complaint. Exactly. He equivocates on what's in that. And if we think that the deposition testimony is more detailed and doesn't gut it, then it has to go back for more.  Because he still hasn't made a proper identification as to... So I would say as far as the one claim of excessive force, which would be the one to be remanded, that he has not made a proper identification as to the personal involvement of Gray Olganski. Okay. Thank you. Thank you. We'll hear rebuttal from Ms. Annapol. Ms. Annapol, would you begin with the notion that the summary judgment was under consideration? Absolutely. The district court did construe the excessive search as part of the excessive force claim. We know this because the court wrote a whole opinion about it. The thing that was dismissed earlier as being heck barred was the existence of the search itself. So what the court held is that the officers had the right to search Mr. McKay. They dismissed that claim as heck barred, but did not have the right to conduct a sexually intrusive... Well, at least at that stage, didn't necessarily have the right to conduct a sexually intrusive search. And so that's why the search part of the argument continued to the motion to summary judgment. By intrusive search, you're referring to both officers, right? Is that accurate? Both officers participated in a search together. In an intrusive body cavity search? They participated in the search, but only one officer reached inside his underwear. That's Officer Gray O. All right, so just so we're clear, your argument is that there was something adjudicated at the motion to dismiss stage regarding the search, but it was only the legitimacy of the search writ large, not the nature of the search. Exactly. And the nature of the search was still live on summary judgment, which is why the district court addressed it in her opinion. Exactly. It was part of the excessive force claim that continued to... Well, it's not. Is it really excessive force? I mean, that I think you're on weaker ground, because I think, isn't it a different claim to say that a search is unreasonably intrusive that's different than excessive force? The court, in its opinion, seems to have construed only one claim as surviving to the summary judgment stage, a claim of excessive force that included everything from the shove to the... Was that right? Because if only an excessive force claim was live on summary judgment, then we should just be focusing on the takedown, not on the box or short search. That's not right, your honor. The reason why we would distinguish between search and seizure usually is that search results in some kind of evidence, which it didn't hear, and even if it had, that claim would have been heck barred. What mattered is the treatment that Mr. McKay was subjected to, not the fact that somebody did a search to look for contraband. The search was excessive and unreasonable and forceful. It was a violent search. It was a violation of his privacy. I'm going to ask you the same question I ask of your opposing counsel. When is it that we go from a valid identification to, okay, we have a valid identification, and then we just have to deal with the extent of the participation of the officers? Yeah, I'd like to clarify a few things on that. Mr. McKay argues that two officers shoved him to the ground, et cetera, et cetera. He did say in his deposition that he had one hand on the back of his neck. That is not to say that only one person shoved him to the ground. It just means there was one hand on the back of his neck. It's completely consistent with all of his pleadings. He also didn't say that six officers shoved him to the ground. He said that two officers specifically, Grayo and Gansky, led the way in shoving him to the ground. That's why they're the two officers that he identified by suing, he identified by naming again and again, and identified in his deposition. This case is exactly like Smith because Mr. McKay was subjected to excessive force by two officers, and he sued exactly those two officers. It's not like Jatrowski or Howell, which my colleague cited, where the plaintiff sued six officers and only accused an unnamed two of them of excessive force. This plaintiff sued two officers and accused both of them of excessive force and nobody else. Okay, thank you. One other, I see my time has expired. You can wrap up briefly, go ahead. I just make one other brief point with respect to the identification by appearance. That is uncontested on this record. There's been no evidence submitted as to the officer's appearance besides Mr. McKay's testimony. In conclusion, for the foregoing reasons, I ask that this court reverse the district court's holdings and remand this case for trial. Judge Fuentes has one more question. This is regarding a statement in the district court who appears to have found that the defendant recanted that his body cavity search occurred. Indeed, on appeal, defendant no longer claims that his boxer shorts were removed or a body cavity search conducted. Could you elaborate on that or clarify with regard to the district court's comments? Yes, your honor, and I'll read directly from the record. This is on JA page 47. They went in my boxer briefs and went and searched around my testicles. It's impossible to imagine how an officer could have reached in his boxer briefs and searched around his testicles without touching them. And even if it were possible to imagine, it's certainly a reasonable inference, which is all that's needed at this stage, or that which should have been made in Mr. McKay's favor that they touched his genitals. He also said later on the same page, he clarified as to whether it was padding from the outside or inside. He said, no, they went in, they went in. And then on page 48 of the joint appendix, he said, I do again, explicitly, explicitly remember someone that was in my boxer briefs. Mr. McKay testified in his deposition that an officer reached in his boxer briefs. It seems very clear that there was genital contact, and it's certainly a reasonable inference that there was. When you say they went in, you're referring to both officers? Mr. McKay testified that it was one officer who went in and identified that person as officer I think as Mr. McKay experienced the search, it was two officers standing shoulder to shoulder. He's handcuffed, and they both searched his person. So I think that can explain some pronoun confusion. Thank you. Thank you, Ms. Rappal. The court will take the matter under advisement. Thank you.